UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| SUSAN WELCH COOPER, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos: | 3:08-cr-137 |
| | ) | | 3:10-cv-335 |
| UNITED STATES OF AMERICA, | ) | | (VARLAN/GUYTON) |
| | ) | | |
| Respondent. | ) | | |

**MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Susan Welch Cooper ("petitioner"). The government has filed its response to the motion. For the following reasons, the § 2255 motion to vacate will be **DENIED** and this action will be **DISMISSED**.

**I.     Standard of Review**

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II. Factual Background

Pursuant to a written plea agreement, petitioner pleaded guilty to fraud in connection with an access device (Count 20), in violation of 18 U.S.C. § 1029(a)(1), and aggravated identity theft (Count 21), in violation of 18 U.S.C. § 1028A(a)(1); the remaining counts of the 21-count indictment were dismissed on motion of the government. She was sentenced to consecutive terms of imprisonment of one day on the fraud conviction and 24 months on the identity theft conviction, for a total effective term of imprisonment of 24 months and one day. Petitioner was also ordered to pay restitution in the amount of $95,893.52. In support of her § 2255 motion, petitioner alleges numerous instances of ineffective assistance of counsel.

## III. Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that her attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The two-part test of Strickland also applies to ineffective assistance of counsel claims in cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52 (1985).

> We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann v. Richardson*, [397 U.S. 759 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

3

*Id*. at 58-59 (footnote omitted).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because she is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that her counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

**A.     Voluntariness of Guilty Plea / Validity of Plea Agreement**

As noted, petitioner has alleged numerous instances of ineffective assistance. As part of her claims of ineffective assistance of counsel, petitioner alleges that her guilty plea was not voluntary or knowing because counsel did not explain the plea agreement to her and she did not know what she was agreeing to when she signed the plea agreement. Petitioner specifically alleges she did not know she was agreeing to full restitution; that the identity theft conviction carried a mandatory two-year sentence; or that the two-year sentence would be imposed consecutively. The Court will address those allegations first.

In 1969, the United States Supreme Court held that, prior to the acceptance of a guilty plea, there must be "an affirmative showing that it [is] intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A guilty plea cannot be knowing and voluntary unless entered with the defendant's full understanding of the charges against him and the possible consequences of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970).

Petitioner's plea agreement stated that she was pleading guilty to one count of fraud in connection with an access device and one count of aggravated identity theft, and that she

4

was facing a sentence of up to 10 years on the fraud conviction and a consecutive two-year sentence on the identity theft conviction. [Criminal Action No. 3:08-cr-137, Doc. 18, Plea Agreement, p. 1, ¶ 1(a) & (b)]. The parties agreed that the Court could impose any lawful term of imprisonment up to the statutory maximum and any lawful term of supervised release, and could order restitution as appropriate. [*Id*. at 2, ¶ 2(a), (c), (e)]. The parties further agreed that, pursuant to Rule 11(c)(1)(B), the United States would not oppose petitioner's request for a sentence of one day as to the fraud conviction. [*Id*., ¶ 3]. Petitioner acknowledged her understanding that the Court was required to impose a consecutive two-year term of imprisonment as to the identity theft conviction. [*Id*.]. Petitioner also agreed "to make full restitution" to the credit card companies for all charges she incurred on their respective accounts. [*Id*. at 3, ¶ 4].

Petitioner acknowledged the elements of the crime that the government would be required to prove beyond a reasonable doubt and stated that she was pleading guilty because she was in fact guilty. [*Id*. at 3, ¶ 5]. She stipulated to the following facts which supported her guilty plea.

> Between December 13, 2006 and May 15, 2007, Susan Cooper obtained 5 separate Chase Bank credit cards, 5 separate American Express credit cards, a Barclays Bank credit card and a GE Money credit card, all in the name of her aunt, Linda Carter, using Carter's personal identifying information. After obtaining the credit cards in Carter's name, Cooper contacted the credit card companies and had additional cards issued in variations of her name (Susan C. Welch, Susan M. Cooper, Susan W. Cooper, and Susan Cooper). From December 2006 through September 2007, Cooper made over 400 charges to the various cards. Except for the GE Money account, Cooper applied for all the credit cards online and used her (Cooper's) address so that the monthly account statement would be sent to Cooper's address rather than Carter's

5

address. The outstanding balance on the fraudulently obtained accounts totals over $95,000.

Linda Carter began getting collection calls in May 2008 regarding outstanding balances on Chase Bank credit cards. She requested a consumer credit report and identified eleven credit card accounts that she did not open or authorize. Carter recognized the address on the accounts as being the residence address of her niece Susan Cooper. Carter explained that in November 2006, Cooper asked Carter to purchase her (Cooper's) house to obtain a better mortgage. Cooper said that she and her husband Russ would continue to live in the house and make the mortgage payments. Cooper told Carter that she would be in better financial shape in two years and would re-purchase the house from Carter. Carter never lived in the house. Because Cooper's address was on the fraudulent credit card accounts, Carter asked Cooper about them Cooper told Carter that the only way her personal information could have been obtained was through the closing papers. Cooper assisted Carter in filing a police report and in completing an on-line complaint with the Internet Crime Complaint Center (IC3). The IC3 complaint alleged that the perpetrator was Charlotte Coppiley [sic] with East Tennessee Financial Title, who handled the loan transaction between Carter and Cooper. Cooper knew this to be false.

On May 22, 2008, Knox County Sheriff's Department Detective Jim Watson obtained a written statement from Cooper. It reads, "I, Susan Cooper, have taken out credit cards in my Aunt Linda J. Carter (Jennings) using all of her information. The first one was taken out shortly after she bought our home and we received all the closing paper. And then others following the first one. I am however not sure how much is owed on these cards."

[*Id*. at 4-5, ¶ 6].

Petitioner further acknowledged the rights she was giving up by pleading guilty. [*Id*. at 6, ¶ 7]. She also acknowledged that no promises had been made by the government as to what her sentence would be; that her sentence would not be determined until after the U.S. Probation Office prepared a pre-sentence report; and that her sentence would be based upon

6

the entire scope of her criminal conduct, her criminal history, the Sentencing Guidelines, and the factors set forth in 18 U.S.C. § 3553. [*Id*. at 7, ¶ 10].

With respect to the payment of restitution, petitioner agreed to the following:

> The defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution.

[*Id*., ¶ 11].

Finally, petitioner agreed not to file a direct appeal of her convictions or sentence, with the exception of a sentence above the sentencing guideline range, or a § 2255 motion, with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct. [*Id*. at 8, ¶ 12(a) & (b)].

In accepting petitioner's guilty plea, the Court fully complied with the plea colloquy procedure as mandated by Rule 11 of the Federal Rules of Criminal Procedure. [*Id*., Doc. 31, Transcript of Change of Plea]. The Court first determined that petitioner was 38 years old with a high school GED. [*Id*. at 4]. The Court next determined that petitioner was competent to enter a guilty plea. [*Id*.]. The Court also determined that petitioner had ample opportunity to discuss the charges against her with her lawyer; that she had told her lawyer everything she know about the case; that her lawyer had advised her as to the nature and meaning of the charges against and the elements of the offenses charged, as well as any

7

defense she might have; that her lawyer had explained the terms of the plea agreement to her; and that she was satisfied with her attorney's advice. [*Id*. at 5-6].

The Court then advised petitioner of the rights she was giving up by pleading guilty. [*Id*. at 6-7]. Petitioner was specifically asked whether any officer or agent of the government had suggested she would receive a lighter sentence by pleading; she answered "No, sir" to the question. [*Id*. at 7]. At the Court's request, the government stated on the record the charges against petitioner, the elements of the offenses, the factual basis for the charges, and the minimum and maximum penalties that petitioner was facing. [*Id*. at 8-11].

Upon questioning by the Court, petitioner acknowledged her understanding of the charges against her and the elements of each charge, as well as the potential punishment. [*Id*. at 12]. Petitioner stated that she was pleading guilty because she was in fact guilty. [*Id*.]. The Court determined that petitioner understood her sentence would be determined by the Court after referring to the applicable sentencing guidelines and other relevant information. [*Id*. at 14]. The Court then accepted the guilty plea.

> The Court has observed the appearance of this defendant and her responsiveness to the questions asked. Based upon these observations and answers, the Court finds that the Defendant, Ms. Susan Welch Cooper, is in full possession of her faculties and competent to plead guilty.
>
> The Defendant is not under the influence of narcotics or other drugs or alcohol; the Defendant knowingly waives her constitutional rights to trial and other rights accorded to persons accused of crime.
>
> The factual basis for the guilty plea has been established, and the Defendant understands the nature and elements of the offenses to which the plea is offered and the maximum and minimum penalties provided by law for

8

the offenses. The Defendant has offered to plea guilty knowingly and voluntarily.

Accordingly, the plea of guilty will be accepted ....

[*Id*. at 15-16].

The Court of Appeals for the Sixth Circuit has held that a defendant's sentence will not be vacated on the ground that the plea of guilty was coerced or is otherwise illegal where the defendant was "carefully interrogated by the trial judge with respect to the offenses committed," where the defendant was represented by "competent counsel," and where the defendant "discussed the offenses freely and voluntarily and freely admitted guilt, while fully aware of [his] rights." *United States v. Parker*, 292 F.2d 2,3 (6th Cir. 1961). It is well-settled that where a Court scrupulously follows the requirements of Fed. R. Crim. P. 11, "'the defendant is bound by his statements in response to that court's inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). *See also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (defendant's "decision to lie to the district court cannot amount to prejudice").

Based upon the foregoing, petitioner cannot now allege that her guilty plea was not knowing and voluntary, or was otherwise invalid, nor can she claim that counsel failed to explain the plea agreement to her. The record reflects that petitioner knowingly and voluntarily signed the plea agreement and pleaded guilty, with full knowledge of the consequences of her guilty plea.

9

Petitioner also claims that her plea agreement is void because it impermissibly delegated to the Bureau of Prisons and the Probation Office the Court's authority to establish a schedule for payment of restitution. This argument overlooks the fact that petitioner agreed that the Bureau of Prisons and the Probation Office would have the authority to establish a payment schedule. *See United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995) ("Any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily.").

### B. Pre-Trial Investigation.

Petitioner claims that her attorney did not conduct any pre-trial investigation nor did he utilize an investigator's services to verify the information she gave him regarding her authority to use the credit cards and payments she made on the accounts. According to petitioner, she is innocent of the charges and an investigation would have revealed the credit card transactions were at the behest of, and for the benefit of, her aunt. Petitioner alleges that due to counsel's ineffective assistance, she entered into an involuntary guilty plea.

Petitioner stated on the record and under oath that she was pleading guilty because she was in fact guilty of the charges. She also stated under oath that her attorney was aware of all the facts of her case and that she was satisfied with his representation. Petitioner cannot now claim that she is innocent of the charges to which she pleaded guilty, nor can she support a claim that her attorney failed to discover evidence of her innocence.

10

### C. Restitution

Petitioner claims she only agreed to restitution in the amount of $3,815.15 and was shocked by the claim of loss of $95,893.52 in the Presentence Report. She alleges her attorney did not inform her that the loss resulting from the dismissed counts of the indictment could be used to calculate her offense level for sentencing purposes or to calculate the amount of restitution she would owe.

Petitioner's claim is contradicted by the record. In her plea agreement, she agreed "to make full restitution" to the credit card companies "for all charges she incurred on the respective accounts." [Criminal Action No. 3:08-cr-137, Doc. 18, Plea Agreement, p. 3, ¶ 4]. The factual basis of the plea agreement noted: "The outstanding balance on the fraudulently obtained accounts totals over $95,000." [*Id*. at 4, ¶ 6]. Petitioner was clearly aware that she was agreeing to pay restitution in excess of $95,000.

It is worth noting that petitioner received the lowest sentence possible under the law. Accordingly, to the extent petitioner alleges she was unaware that the loss from the dismissed counts would be used to calculate her offense level, she cannot show she was prejudiced by her attorney's alleged failure in this regard.

### D. Appeal of Restitution Award

Petitioner alleges her attorney should have appealed the award of full restitution. As noted, petitioner agreed to make full restitution and thus there would have been no basis for an appeal. In addition, petitioner voluntarily and knowingly agreed to waive her rights to appeal.

11

### E. Presentence Report / Mitigating Factors

Petitioner alleges that her attorney failed to review the Presentence Report with her, that he failed to file any objections to the Presentence Report, and that he failed to present mitigating factors to the Court. Petitioner claims counsel should have made the following objections: (1) traumatic losses that petitioner suffered during the nine months prior to the indictment were not detailed in the Presentence Report; (2) amount of loss was exaggerated; (3) payments petitioner made were not credited against the amount of loss; and (4) petitioner did not plead to the total loss of $95,893.52.

Petitioner's claim that her attorney did not review the Presentence Report with her is flatly contradicted in the record. During the sentencing hearing, the following conversation took place:

> THE COURT: Ms. Cooper, have you received and had the opportunity to discuss the Presentence Report in this case with your attorney?
>
> MS. COOPER: I have.
>
> THE COURT: Mr. Tollison, have you received the Presentence Report in this case and reviewed it with Ms. Cooper?
>
> MR. TOLLISON Yes, we have, Your Honor.

[Criminal Action No. 3:08-cr-137, Doc. 32, Transcript of Sentencing Hearing, p. 4].

As noted, petitioner received the lowest sentence possible under the law. Accordingly, she was not prejudiced by any alleged failure on the part of counsel to object to the Presentence Report or his alleged failure to present mitigating factors.

12

Based upon the foregoing, petitioner has failed to demonstrate that she received ineffective assistance of counsel under the standard set forth in *Strickland*.

IV. **Conclusion**

Petitioner is not entitled to relief under § 2255 and her motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE